**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------- x
JUAN ALMAZO-RAMIREZ,
ERIK SUAREZ, and
NICK GIOULES,
*on behalf of themselves and others similarly situated,*

          Plaintiffs,    Case No. 21-cv-02678

      v.          29 U.S.C. § 216(B) COLLECTIVE
               ACTION & FED. R. CIV. P. 23
BUENA VIDA PHARMACY, INC.,   CLASS ACTION
JACKSON HEIGHTS PHARMACY INC.,
LA GRAN FARMACIA INC.,     JURY TRIAL DEMANDED
THE TRUMP PHARMACY INC.,
NUEVA LUZ PHARMACY II INC,   **COMPLAINT**
ABRAHAM E. VARGAS
    a/k/a Abraham Vargas, and
SARAH ROSE VARGAS
    a/k/a Sarah R. Vargas
    a/k/a Sarah Vargas,

          Defendants.
----------------------------------------------------------------- x

    Plaintiffs JUAN ALMAZO-RAMIREZ (hereinafter "Ramirez"), ERIK SUAREZ (hereinafter "Suarez"), and NICK GIOULES (hereinafter "Gioules") (collectively hereinafter "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants BUENA VIDA PHARMACY, INC., JACKSON HEIGHTS PHARMACY INC., LA GRAN FARMACIA INC., THE TRUMP PHARMACY INC., SELIV LLC, and NUEVA LUZ PHARMACY II INC, (hereinafter the "Corporate Defendants"), and ABRAHAM E. VARGAS a/k/a Abraham Vargas (hereinafter "Abraham Vargas"), and SARAH ROSE VARGAS a/k/a Sarah R. Vargas a/k/a Sarah Vargas (hereinafter "Sarah Vargas"), (hereinafter collectively the "Individual Defendants") (hereinafter collectively with the Corporate Defendants the "Defendants"), and allege as follows:

## INTRODUCTION

1.  This action is brought by Plaintiffs, on behalf of themselves as well as other similarly

situated employees against Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.

3.      Defendants willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including all work done in excess of forty hours each week.

4.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs.

5.      Plaintiffs further allege pursuant to NYLL § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of hours" compensation, (4) liquidated damages, (5) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a wage notice at time of hire compliant with Section 195.1 of the NYLL, (6) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide wage statements compliant with Section 195.3 of the NYLL with each payment of wages, (7) nine percent (9%) prejudgment interest, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and some of the acts and omissions giving rise to the claims herein alleged took place in this District.

9.      Plaintiffs are pursuing claims under the FLSA and NYLL in the case *Almazo-Ramirez v. Ulises Pharmacy Inc*, No. 19-cv-07290 (ARR) (ST), proceeding in the United States District Court for the Eastern District of New York, against Ulises Pharmacy Inc., Nuestra Farmacia Inc., Divina Farmacia Inc., Farmacia Popular Inc., Super Vida Pharmacy Inc., Quality Care Pharmacy Inc., Nueva Luz Pharmacy Inc. (pleaded against under the name "Nuestra Luz Pharmacy Inc"), Ulises Rafael Vargas a/k/a Ulises Vargas Sr., and his son Ulises Vargas Jr.

## **PLAINTIFFS**

10.      Ramirez was employed to work as a pharmacy technician at pharmacies located at 90-08 37th Avenue, Jackson Heights, NY 11372 and 90-10 37th Avenue, Jackson Heights, NY 11372 from 2016 through on or about November 4, 2019. During Ramirez's employment, 90-08 37th Avenue was operated by Ulises Pharmacy Inc., and 91-10 37th Avenue was operated by Buena Vida Pharmacy, Inc. and Jackson Heights Pharmacy Inc. After about November 2019, after Ramirez's employment ended, the pharmacy at 91-10 37th Avenue was also operated by La Gran Farmacia Inc.

11.      Suarez was employed to work as a stocker, cashier, and driver at pharmacies located at 91-10 37th Avenue, Jackson Heights, NY 11372, 91-08 37th Avenue, Jackson Heights, NY 11372, and 74-23 37th Avenue, Jackson Heights, NY 11372 from about October 2018 through on or about December 1, 2019. During Suarez's employment, 91-10 37th Avenue was operated by Buena Vida

Pharmacy, Inc., Jackson Heights Pharmacy Inc., and La Gran Farmacia Inc, 90-08 37th Avenue was operated by Ulises Pharmacy Inc., and 74-23 37th Avenue was operated by Super Vida Pharmacy Inc.

12.     Gioules was employed to work as a pharmacist at the pharmacy located at 91-08 37th Avenue, Jackson Heights, NY 11372 from on or about March 15, 2018 through on or about December 1, 2018. Gioules was employed to work as a pharmacist at the pharmacies located at 91-10 37th Avenue, Jackson Heights, NY 11372, 85-13 Northern Boulevard, Jackson Heights, NY 11372, and 91-08 37th Avenue, Jackson Heights, NY 11372 from on or about May 15, 2019 through on or about September 27, 2019. During Gioules's employment, 91-10 37th Avenue was operated by Buena Vida Pharmacy, Inc. and Jackson Heights Pharmacy Inc. After about November 2019, after Gioules's employment ended, the pharmacy at 91-10 37th Avenue was also operated by La Gran Farmacia Inc. During Gioules's employment, 91-08 37th Avenue was operated by Ulises Pharmacy Inc. During Gioules's employment, 85-13 Northern Boulevard was operated by Divina Farmacia Inc.

## **DEFENDANTS**

### *Corporate Defendants*

13.     Buena Vida Pharmacy, Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address at 91-08 37th Avenue, Jackson Heights, NY 11372 (which is also the registered address of Ulises Pharmacy Inc.) and a principal place of business at 91-10 37th Avenue, Jackson Heights, NY 11372 (which is the neighboring space to 91-08 37th Avenue, Jackson Heights, NY 11372).

14.     Jackson Heights Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 91-10 37th Avenue, Jackson Heights, NY 11372.

15.    La Gran Farmacia Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 91-10 37th Avenue, Jackson Heights, NY 11372.

16.    The Trump Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 85-26 37th Avenue, Jackson Heights, NY 11372, which shares a single space with 85-24 37th Avenue, Jackson Heights, NY 11372, which is a pharmacy operated by Nuestra Farmacia Inc.

17.    Nueva Luz Pharmacy II Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address at 23-25 91st Street, Floor 1, East Elmhurst, NY 11369, which is a residence formerly owned by Ulises Vargas Sr. and his ex-wife until about February 27, 2017, and owned by his ex-wife thereafter until the present.

*Corporate Non-Defendants*

18.    Ulises Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 91-08 37th Avenue, Jackson Heights, NY 11372.

19.    Nuestra Farmacia Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 85-24 37th Avenue, Jackson Heights, NY 11372.

20.    Divina Farmacia Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 85-13 Northern Boulevard, Jackson Heights, NY 11372.

21.    Farmacia Popular Inc. f/k/a Ulises S Pharmacy Inc. f/k/a Ulisess Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 81-11 Northern Boulevard, Jackson Heights, NY 11372.

22.    Super Vida Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 74-23 37th Avenue, Jackson Heights, NY 11372.

23.    Quality Care Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 50 Warburton Avenue, Yonkers, NY 10701.

24.    Nueva Luz Pharmacy Inc. f/k/a Buena Vida Pharmacy Inc. is a domestic business corporation organized under the laws of the State of New York with a registered address and principal place of business at 80-09 37th Avenue, Jackson Heights, NY 11372.

### Individual Defendants

25.    The Individual Defendants are shareholders of the Corporate Defendants and are shareholders of the Corporate Non-Defendants.

26.    Being among the ten largest shareholders of the Entity Defendant, the Individual Defendants are individually responsible for unpaid wages under the New York Business Corporation Law.

27.    Abraham Vargas is the son of Ulises Vargas Sr., a shareholder in at least Farmacia Popular Inc. f/k/a Ulises S Pharmacy Inc. f/k/a Ulisess Pharmacy Inc., and is a manager at each location operated by the Corporate Defendants and Corporate Non-Defendants with authority over the Plaintiffs' work and with the authority to hire and fire employees of the Corporate Defendants and Corporate Non-Defendants, who supervised and controlled employees at the pharmacies operated by the Corporate Defendants and Corporate Non-Defendants, who determined salaries for employees at the pharmacies operated by the Corporate Defendants and Corporate Non-Defendants, and who kept records for the Corporate Defendants and Corporate Non-Defendants.

28.    Sarah Vargas is the daughter of Ulises Vargas Sr., a shareholder in at least Quality Care

Pharmacy Inc., Super Vida Pharmacy Inc., and Divina Farmacia Inc., and is a manager at each location operated by the Corporate Defendants and Corporate Non-Defendants with authority over the Plaintiffs' work and with the authority to hire and fire employees of the Corporate Defendants and Corporate Non-Defendants, who supervised and controlled employees at the pharmacies operated by the Corporate Defendants and Corporate Non-Defendants, who determined salaries for employees at the pharmacies operated by the Corporate Defendants and Corporate Non-Defendants, and who kept records for the Corporate Defendants and Corporate Non-Defendants.

## STATEMENT OF FACTS

### Corporate Defendants and Corporate Non-Defendants Constitute a Single Enterprise

29.     Corporate Defendants and Corporate Non-Defendants operate a group of pharmacies located almost entirely between 74th and 92nd Streets on 37th Avenue in Jackson Heights, Queens, to wit, at: 91-08 37th Avenue, Jackson Heights, NY 11372 (hereinafter "Ulises Pharmacy") and 91-10 37th Avenue, Jackson Heights, NY 11372 (hereinafter "Buena Vida Pharmacy"); 85-24 and 85-26 37th Avenue, Jackson Heights, NY 11372; 85-13 Northern Boulevard, Jackson Heights, NY 11372 (hereinafter "Nuestra Farmacia"); 85-13 Northern Boulevard, Jackson Heights, NY 11372 (hereinafter "Divina Pharmacy"); 81-11 Northern Boulevard, Jackson Heights, NY 11372 (hereinafter "Farmacia Popular"); 74-23 37th Avenue, Jackson Heights, NY 11372 (hereinafter "Super Vida Pharmacy"); 80-09 37th Avenue, Jackson Heights, NY 111372 (hereinafter "Nueva Luz Pharmacy"); and 50 Warburton Avenue, Yonkers, NY 10701 (hereinafter "Quality Care Pharmacy").

30.     At all relevant times herein, Corporate Defendants and Corporate Non-Defendants were, and continue to be, a single enterprise and employer with a high degree of interrelated and unified operation, common ownership in the persons of Abraham Vargas, Sarah Vargas, their father Ulises Rafael Vargas a/k/a Ulises Vargas Sr., and their brother Ulises Luda Vargas a/k/a Ulises Vargas

Jr. common management in the persons of Abraham Vargas, Sarah Vargas, Ulises Vargas Sr., and Ulises Vargas Jr., centralized control of labor relations conducted by Ulises Vargas Sr., Abraham Vargas, and Sarah Vargas, common control by Abraham Vargas, Sarah Vargas, Ulises Vargas Sr., and Ulises Vargas Jr., a common business purpose, and interrelated business goals.

31.     The pharmacies frequently transfer employees among themselves. Throughout his employment, Ramirez was required to work at either Ulises Pharmacy or Buena Vida Pharmacy based on need. Suarez began his employment at Buena Vida Pharmacy, was transferred to Ulises Pharmacy for two weeks, and was transferred again to Super Vida Pharmacy for the remaining weeks of his employment. Gioules was required to work at Buena Vida Pharmacy, Ulises Pharmacy, and Divina Pharmacy based on need.

32.     Additionally, a pharmacy technician named "Maribel" was transferred from Nuestra Pharmacy to Buena Vida Pharmacy to Ulises Pharmacy over the course of her employment; a pharmacy technician named "Jised" was transferred from Buena Vida Pharmacy to Ulises Pharmacy over the course of her employment; a pharmacy technician named "Jonathan" was transferred from Buena Vida Pharmacy to Ulises Pharmacy over the course of his employment; a cashier named "Andrea Palacios" was transferred from Super Vida Pharmacy to Ulises Pharmacy over the course of her employment; a cashier named "Yocies" was transferred from Super Vida to Ulises Pharmacy to Divina Pharmacy to Ulises Pharmacy over the course of her employment; a pharmacy technician named "Johana" was transferred from Ulises Pharmacy to Nuestra Farmacia over the course of her employment; and a pharmacy technician named "Leidy" was transferred from Nuestra Farmacia to Ulises Pharmacy over the course of her employment.

33.     Additionally, a cashier named "Carmen Emilio Castillo," who worked at Ulises Pharmacy, quit rather than be transferred to Super Vida.

34.    At all relevant times, the Corporate Defendants together, and the Corporate Defendants and Corporate Non-Defendants together, had gross annual revenue in excess of five hundred thousand dollars ($500,000.00).

35.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Corporate Defendants and Corporate Non-Defendants.

***Wage-and-Hour Claims***

36.    Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

37.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

38.    While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

39.    Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

40.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

41.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

42.    Defendants did not post the required New York State Department of Labor posters

regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**JUAN ALMAZO-RAMIREZ**

43.     Ramirez was employed to work as a pharmacy technician at Ulises Pharmacy and Buena Vida Pharmacy, from 2016 through on or about November 4, 2019.

44.     From 2016 through on or about June 30, 2018, Ramirez typically worked 47.5 hours per week: from 09:30 hours through 19:00 hours Mondays through Fridays.

45.     From on or about July 1, 2018 through on or about October 31, 2018, Ramirez typically worked 40 hours per week: from 10:00 hours through 18:00 hours Mondays through Fridays.

46.     From on or about November 1, 2018 through on or about October 6, 2019, Ramirez typically worked 47 hours per week: from 10:00 hours through 18:00 hours Mondays through Fridays, and from 10:00 hours through 17:00 hours on Saturdays.

47.     From on or about October 7, 2019 through on or about October 20, 2019, Ramirez was on vacation.

48.     From on or about October 21, 2019 through on or about November 4, 2019, Ramirez typically worked 8 hours per week: from 10:00 hours through 18:00 hours on Mondays.

49.     Throughout his employment in 2016, Ramirez was paid $18.00 per hour, including for overtime hours, every two weeks.

50.     Throughout his employment in 2017, Ramirez was paid $20.00 per hour, including for overtime hours, every two weeks.

51.     From on or about January 1, 2018 through on or about October 31, 2018, Ramirez was paid $21.00 per hour, including for overtime hours, every two weeks.

52.     From on or about November 1, 2018 through on or about November 4, 2019, Ramirez was paid $22.00 per hour, every two weeks.

53.     From 2016 through about June 30, 2018, Ramirez was paid $750.00 by check every two

weeks, with the remainder of his pay in cash.

54.    Thereafter through November 4, 2019, Ramirez was paid by check.

55.    Ramirez was not provided, either at the start of his employment or any time thereafter, with a wage notice in English and his primary language of Spanish stating: his rate or rates of pay and basis thereof (both regular hourly and overtime rates); allowances claimed as part of the minimum wage; his regular pay day; his employer's name; any "doing business as" names used by his employer; the physical address of his employer's main office or principal place of business, and a mailing address if different; the telephone number of his employer.

56.    Ramirez was not provided a written statement with each payment of wages stating: the dates of work covered by that payment of wages; his name; his employer's name; his employer's address and phone number; his rate or rates of pay and basis thereof (regular hourly and overtime); his hours worked (regular and overtime), his gross wages; deductions; allowances, claimed as part of the minimum wage; and his net wages.

### *ERIC SUAREZ*

57.    Suarez was employed to work as a stocker, cashier, and driver from about October 2018 through on or about December 1, 2019.

58.    For all but about the last six weeks of his employment Suarez worked as a stocker, cashier, and driver at Buena Vida Pharmacy.

59.    Thereafter, he was transferred to Ulises Pharmacy for about two weeks.

60.    Thereafter, through the end of his employment, he was transferred to Super Vida Pharmacy.

61.    Throughout his employment, Suarez worked about six hours per day, Mondays through Saturdays (six days per week). His daily start and end times varied and were not fixed.

62.    Throughout his employment, Suarez was paid $13.50 per hour.

63.     Throughout his employment, Suarez's duties included delivering customers' orders in his car.

64.     It cost Suarez approximately $50.00 to fill his car's gas tank, which he had to do multiple times per week.

65.     However, Defendants only gave him $50.00 per week for gas.

66.     Suarez was not provided, either at the start of his employment or any time thereafter, with a wage notice in English and his primary language of Spanish stating: his rate or rates of pay and basis thereof (both regular hourly and overtime rates); allowances claimed as part of the minimum wage; his regular pay day; his employer's name; any "doing business as" names used by his employer; the physical address of his employer's main office or principal place of business, and a mailing address if different; the telephone number of his employer.

67.     Suarez was not provided a written statement with each payment of wages stating: the dates of work covered by that payment of wages; his name; his employer's name; his employer's address and phone number; his rate or rates of pay and basis thereof (regular hourly and overtime); his hours worked (regular and overtime), his gross wages; deductions; allowances, claimed as part of the minimum wage; and his net wages.

### NICK GIOULES

68.     Gioules was employed to work as a pharmacist at Ulises Pharmacy from on or about March 15, 2018 through on or about December 1, 2018.

69.     Gioules was employed to work as a pharmacist at Buena Vida Pharmacy (Mondays through Wednesdays), Divina Pharmacy (Thursdays and Fridays), and Ulises Pharmacy (occasional Saturdays) from on or about May 15, 2019 through on or about September 27, 2019.

70.     From on or about March 15, 2018 through on or about December 1, 2018, Gioules worked 52 hours per week: from 10:00 hours through 19:00 hours Mondays through Fridays, and from

10:00 hours through 17:00 hours on Saturdays.

71.     From on or about May 15, 2019 through on or about September 27, 2019, Gioules worked either 45 hours or 52 hours per week, depending on whether he worked Saturdays: from 10:00 hours through 19:00 hours Mondays through Fridays, and (sometimes) from 10:00 hours through 17:00 hours on Saturdays.

72.     Throughout his employment, Gioules was paid $60.00 per hour, including for overtime hours, by check.

73.     Gioules was not provided, either at the start of his employment or any time thereafter, with a wage notice in English and his primary language of Spanish stating: his rate or rates of pay and basis thereof (both regular hourly and overtime rates);  allowances claimed as part of the minimum wage;  his regular pay day;  his employer's name;  any "doing business as" names used by his employer;  the physical address of his employer's main office or principal place of business, and a mailing address if different;  the telephone number of his employer.

74.     Gioules was not provided a written statement with each payment of wages stating: the dates of work covered by that payment of wages;  his name;  his employer's name;  his employer's address and phone number;  his rate or rates of pay and basis thereof (regular hourly and overtime);  his hours worked (regular and overtime), his gross wages;  deductions;  allowances, claimed as part of the minimum wage;  and his net wages.

## COLLECTIVE ACTION ALLEGATIONS

75.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case and who were not compensated at their promised hourly rate for all hours worked and at one-and-one-half times their promised work for all hours worked in excess of forty (40) hours per week.

## CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein.

77.    All said persons, including Plaintiff, are referred to herein as the "Class."

78.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

79.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

80.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a.    Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

     b.    Whether Plaintiffs and Class members are not paid wages for all hours worked;

     c.    Whether Plaintiffs and Class members are entitled to and paid overtime at their

promised hourly wage under the New York Labor Law;

d.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

e.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

f.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

g.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

81.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' enterprise-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

82.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation

cases.

### *Superiority*

83.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

84.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so

can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

**Count I.**
**[Violation of New York Labor Law—Failure to Pay Wages**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

85.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

86.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

87.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the Class, in full for some or all of the hours they worked.

88.    Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wages in the lawful amount for hours worked.

89.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

**Count II.**
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

90.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

91.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives

compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

92.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

93.    Defendants' failure to pay Plaintiffs and the Collective their overtime pay violated the FLSA.

94.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and the Collective for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

95.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

96.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collective's labor.

97.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective.

### Count III.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiffs and Rule 23 Class]

98.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

99.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

100.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

101.    Defendant' failure to pay Plaintiffs overtime pay violated the NYLL.

102.    Defendants' failure to pay Plaintiffs was not in good faith.

**Count IV.**
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

103.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

105.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle

and rate of overtime on their or her first day of employment.

106.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

107.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**Count V.**
**[Violation of New York Labor Law—Failure to Provide Wage Statements**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

108.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

109.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

110.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' paydays.

111.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the Collective and 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)        An award of liquidated and/or punitive damages as a result of Defendants'

knowing and willful failure to pay wages at least the hourly minimum wage, overtime

compensation pursuant to 29 U.S.C. §216;

h)        Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a Time of Hire Notice detailing rates of pay and payday;

i)        Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a paystub that lists employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and net

wages for each pay day;

j)        An award of liquidated and/or punitive damages as a result of Defendants' willful

failure to overtime compensation, pursuant to New York Labor Law;

k)        An award of costs and expenses of this action together with reasonable attorneys'

and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)        The cost and disbursements of this action;

m)        An award of prejudgment and post-judgment fees;

n)        Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL §198(4); and

o)        Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, New York
          May 13, 2021

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)
Aaron Schweitzer (AS 6369)